IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

JAMES PATRICK HAWKINS,
   *Defendant.*

Criminal Action No. ELH-17-384

**MEMORANDUM OPINION**

On August 5, 2020, James Patrick Hawkins, through counsel, filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)" (ECF 156, the "Motion"), supported by six sealed exhibits. ECF 156-1 to ECF 156-6. The government opposes the Motion (ECF 161) and submitted three sealed exhibits, including extensive medical records. ECF 161-1 to EF 161-3. Defendant has replied. ECF 164.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I. Background**

A grand jury in the District of Maryland returned an indictment on July 19, 2017, charging Hawkins and three codefendants with conspiracy to distribute and possess with intent to distribute heroin and Furanyl fentanyl, in violation of 21 U.S.C. § 846. ECF 18. Hawkins had his initial appearance on July 24, 2017. ECF 24. He was released on pretrial supervision on July 25, 2019. ECF 55. The defendant remained on release until August 6, 2018, when he surrendered to serve his sentence. ECF 98.

On February 22, 2018, Hawkins entered a plea of guilty (ECF 80), pursuant to a Plea Agreement. ECF 81. Under the Plea Agreement, the parties contemplated a final offense level under the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") of either 27 or 34, depending

on whether Hawkins was found to be a Career Offender. ECF 81, ¶ 6. But, pursuant to Fed. R. Crim. P. 11 (c)(1)(C), the parties agreed to a term of imprisonment of sixty months. ECF 81, ¶ 9.

The Plea Agreement included a stipulation of facts. *See* ECF 81 at 8. According to the stipulation, beginning "in or around January 2017," Hawkins conspired with three others "to sell heroin, fentanyl, and marijuana." *Id.* The defendant "acted as the middle man" for sales that co-conspirator Omar Natifie Black, Jr. made to an undercover detective. *Id.* Specifically, on January 10, 2017, the defendant facilitated Black's acquisition of over 100 grams of fentanyl from another co-conspirator, Thomas Hearn. *Id.* Later that day, Black met with the undercover detective to engage in a drug sale. *Id.* Lab tests later revealed that the substance that Black sold the detective weighed approximately 121.5 grams and contained fentanyl. *Id.*

The Presentence Investigation Report ("PSR," ECF 86) reflected that Hawkins had a base offense level of 30. *Id.* ¶ 15. However, because Hawkins had at least two prior felony convictions for controlled substance offenses, he qualified as a Career Offender. *Id.* ¶ 21; *see* U.S.S.G. § 4B1.1(a), (b)(1). After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, *id.* ¶¶ 22-23, Hawkins had a final offense level of 34. *Id.* ¶ 25.

Hawkins had a Criminal History Category of VI because he was a Career Offender and also because he had fourteen criminal history points. *Id.* ¶¶ 38-39. In particular, he had two prior Maryland convictions for felony drug offenses, which dated to 2010 and 2011. *Id.* ¶¶ 32, 34. For the 2010 offense, possession with intent to distribute marijuana, the defendant received a sentence of five years of incarceration, with all but two days suspended, followed by probation. *Id.* ¶ 32. For the 2011 offense, possession with intent to distribute controlled substances, the defendant was sentenced to two years of imprisonment. *Id.* ¶ 34. In May 2012, he was convicted of violation of probation with respect to his 2010 offense, and received a three-year sentence. *Id.* ¶ 32. Hawkins

also had three convictions for driving on a suspended license, *id.* ¶¶ 29, 30, 31; one for attempting to elude police, *id.* ¶ 33, and one for driving under the influence of alcohol. *Id.* ¶ 35.

Sentencing was held on June 1, 2018. ECF 97. At sentencing, the defendant weighed approximately 300 pounds, and stood six feet two inches tall. ECF 86, ¶ 57. The PSR noted that the defendant "suffered from extreme obesity when he was younger, and he constantly struggles with his weight." *Id.* ¶ 59. In addition to obesity, the defendant's medical history included high blood pressure, severe depression, anxiety, fatigue, and hypogonadism, *i.e.*, "primary testicular failure" that results in a low testosterone level. ECF 86, ¶ 61; *see also* ECF 156-2 at 3; ECF 156 at 1, 3-4, 8.

Based on an offense level of 34 and a Criminal History of VI, Guidelines called for a period of incarceration ranging from 262 to 327 months of imprisonment. *Id.* ¶ 77. If the defendant were not a Career Offender, however, his Guidelines would have been 130 to 162 months. However, pursuant to the C plea, the Court imposed a term of imprisonment of sixty months. ECF 98 (Judgment); ECF 99 (Statement of Reasons).

Hawkins, who was born in 1987, is now thirty-three years of age. ECF 86 at 2. He is presently incarcerated at FCI Milan, in Milan, Michigan. ECF 161 at 9. It is a low security facility, fairly far from the defendant's home in Maryland. The defendant's son was born while the defendant has been incarcerated. ECF 156 at 3.

Hawkins has served about twenty-five months of his sentence, which equates to approximately 42% of his sentence. *See* ECF 156 at 4.[1] He has a projected release date of January 27, 2023. *See* ECF 161 at 3; *see also Find an Inmate*, Federal Bureau of Prisons,

---

[1] On August 5, 2020, when the Motion was filed, Hawkins had served twenty-three months. He stated that this equated to 26% of his sentence. ECF 156 at 14. By my calculation, however, he had served approximately 38% of his sentence.

https://www.bop.gov/inmateloc/ (last accessed October 21, 2020). While incarcerated, the defendant incurred one disciplinary infraction for possession of a hazardous tool, *i.e.*, a cellphone. ECF 156-1.

The defendant's medical records from August 13, 2018, reflected a weight of 325 pounds. ECF 156-6 at 2. This yielded a body mass index ("BMI") of 41.7. *Id.* at 3. By June 2020, he weighed 270 pounds. ECF 161-2 at 63. Given that the defendant is 74 inches in height, his BMI was approximately 34.7.[2]

According to the defense, Hawkins "has never received any of his medically necessary testosterone treatments while incarcerated." ECF 156 at 4. But, during the pandemic, he was deemed "high risk" at the institution because of his various health conditions, and he was quarantined for about a month. *Id.* As a result, his "health and mental state has deteriorated rapidly." *Id.*

On May 21, 2020, Hawkins, through counsel, requested consideration for compassionate release from the Warden of FCI Milan. ECF 161-1. The Warden did not respond to the request. ECF 156 at 8; ECF 161 at 3.

Additional facts are included, *infra*.

## II. Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395

---

[2] The defendant's BMI was determined with the aid of the calculator available through the CDC's website. *See Adult BMI (Body Mass Index) Calculator*, CDC, https://www.cdc.gov/widgets/healthyliving/index.html#bmicalculator (last accessed October 20, 2020).

(4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant *see*king compassionate release had to rely on the BOP Director for relief. *See, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted

his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction

based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>  (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>  (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to

reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 2020 WL 5412762, at * 1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III. COVID-19[3]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[4]

---

[3] The Court may take judicial notice of matters of public record. *See* Fed. R. Ev*id.* 201.

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease*

The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of October 21, 2020, COVID-19 has infected more than 8.2 million Americans and caused over 221,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Oct. 21, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020).

---

*and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

Indeed, for a significant period of time, life as we have known it came to a halt. Although many schools, colleges, and businesses have now reopened, some remain closed. And, in view of the recent resurgence of the virus in some parts of the country, schools, colleges and businesses that had opened are again facing closure or restrictions.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the BMI is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type II diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma

is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered

as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 745 at 10-12 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[5] As of October 19, 2020, the BOP had 125,981 federal inmates and 36,000 staff. Also as of October 19, 2020, the BOP reported that 1,698 inmates and 774 BOP staff currently tested positive for COVID-19; 14,611 inmates and 1,261 staff had recovered from the virus; and 127 inmates and two staff member have died from the virus. And, the BOP has completed 65,320 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Oct. 19, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Milan, where the defendant is a prisoner, as of October 19, 2020, the BOP reported that two inmates and one staff member currently have tested positive for COVID-19 and 86 inmates and 55 staff have recovered at the facility. Three inmates have died. And, the facility has completed COVID-19 465 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Oct. 19, 2020).

### IV.  Discussion

Hawkins moved for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. ECF 156 at 8-11. He explains that he suffers from obesity and elevated blood pressure, each a risk factor for COVID-19 identified by the CDC, and hypogonadism, among multiple other conditions. ECF 156 at 8. With respect to his hypogonadism, Hawkins asserts: "Emerging medical research shows that a low testosterone level is a predictor of poor prognosis in men for COVID-19." *Id.* at 9. In support, he discusses the findings of two articles recently published in medical journals, which are appended to the Motion.

---

[5] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

*Id.*; ECF 156-3; ECF 156-5. Further, the defendant contends that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor release. ECF 156 at 11-15.

The government concedes that Hawkins's obesity constitutes an extraordinary and compelling reason for relief under U.S.S.G. § 1B1.13. ECF 161 at 10-11. However, it also asserts that Hawkins did not address his obesity in his request to the Warden on May 21, 2020. *Id.* at 11. Further, the government disputes that Hawkins's hypogonadism and hypertension constitute extraordinary and compelling reasons. *Id.* at 11-12. And, in any event, the government maintains that the defendant is a danger to the community and that the § 3553(a) factors militate against reducing his sentence. *Id.* at 14-18.

### A. Exhaustion of Administrative Remedies

As noted, on May 21, 2020, Hawkins, through counsel, submitted a letter to the Warden of FCI Milan requesting compassionate release. ECF 161-1. The letter states: "This request is based on the 'extraordinary and compelling' circumstances arising out of the COVID-19 pandemic and Mr. Hawkins's high risk medical profile, which renders him susceptible to severe complications or death if he contracts the novel coronavirus." *Id.*

As the government observes, the thrust of the letter is that Hawkins's testosterone deficiency renders him particularly vulnerable to COVID-19. *Id.* The government implies in its Opposition that the Court should determine that the letter did not exhaust Hawkins's administrative remedies because it did not sufficiently address Hawkins's obesity, which according to the government is Hawkins's only medical condition that constitutes an extraordinary and compelling basis for relief.

I decline to so construe the letter. The government fails to acknowledge that the letter does in fact reference Hawkins's obesity. It states: "[Hawkins] receives weekly injections of

Testosterone to prevent or treat depression and obesity. . . . Prior to starting his Testosterone hormone treatment, Mr. Hawkins struggled with this weight and mental health. The PSR indicated that it is important for Mr. Hawkins to continue treatment and stay active while incarcerated." *Id.*

Moreover, the Warden could have read the letter against the backdrop of Hawkins's medical records, which demonstrate that Hawkins is obese. Records from March 23, 2020, appended by the government to its Opposition, show that the defendant is 74 inches in height and weighed 265 pounds. ECF 161-2 at 39. And, as noted, records from June 16, 2020 show that the defendant then weighed 270 pounds. *Id.* at 63. At the lesser of those two weights, the defendant's BMI was 34.02, thus qualifying him as obese per CDC guidelines.[6]

In any event, the letter of May 21, 2020, stated in no uncertain terms that the defendant was requesting compassionate release because of his particular medical vulnerability to the coronavirus. And, the Warden did not respond. Thus, the Motion is ripe for review under 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Circumstances

The parties vigorously dispute whether Hawkins's hypogonadism makes him especially vulnerable to COVID-19, as well as whether Hawkins has received adequate treatment for hypogonadism while imprisoned. *See* ECF 161 10-12; ECF 164 3-6. For present purposes, the Court need not resolve these disagreements, however important they may be. That is because the government concedes that, pursuant to the position of the Department of Justice, Hawkins's documented obesity constitutes an "extraordinary and compelling" basis for relief. ECF 161 at 10.

---

[6] The defendant's BMI was calculated with the calculator available through the CDC's website. *See* n.2, *supra*.

### C. Analysis

The Court must consider whether, if released, Hawkins would pose a danger to the community, as provided in 18 U.S.C. § 3142(g). *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The government urges that conclusion, citing the seriousness of his offense: conspiracy to distribute over 100 grams of fentanyl. ECF 161 at 14-15. The government also underscores that Hawkins engaged in the conduct leading to the instant offense while on probation for a prior crime; that Hawkins has incurred a disciplinary infraction at FCI Milan for possession of a hazardous tool; and that Hawkins has served less than half of his sentence. *Id.* In the government's view, the defendant's record does not inspire confidence that, if released, he would be a law-abiding citizen and comply with social distancing guidelines. *Id.*

Hawkins acknowledges the seriousness of the crime at issue here. ECF 156 at 13. But, he emphasizes that the crime involved "neither weapons nor allegations of violence." *Id.* Moreover, Hawkins asserts that if released he "will be an asset to the community rather than a danger." *Id.* The defendant highlights his strong family ties. He is close to his mother and grandmother, who "will welcome him back to their home." *Id.* Further, Hawkins has a young son with his partner of multiple years, and he helped to raise his partner's other son. *Id.* at 3. Hawkins's partner has "expressed a desire for Mr. Hawkins to return to his place in the family and be a strong father" for their two sons. *Id.* at 13.

The sentencing factors under 18 U.S.C. § 3553(a) include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As to the defendant's disciplinary infraction, he explains that it was for possession of a cellphone. ECF 164 at 6. But, cellphones are contraband, and Hawkins violated prison policy in having one. His failure to abide by the rules does not weigh in his favor.

With respect to the first factor under § 3553(a), Hawkins's prior record is particularly relevant. As noted, based on the defendant's prior record, Hawkins qualified as a Career Offender. Between the ages of eighteen and twenty-four, Hawkins pleaded guilty three times to drug distribution offenses. *See* ECF 86, ¶¶ 28, 32, 34. For the first offense, the defendant received a suspended sentence. *See id.* ¶ 28. For the second, Hawkins was sentenced to five years of imprisonment, with all but two days suspended. *See id.* ¶ 32. For the third drug offense, the defendant was sentenced to two years of imprisonment. *See id.* ¶ 34. Moreover, Hawkins pleaded guilty twice to violations of probation. *See id.* ¶¶ 28, 32. And, he committed several vehicular offenses, including a 2012 attempt to elude police by failing to stop. *Id.* ¶ 33.

The defendant's prior record, including his violations of probation, are troubling. The criminal justice system was lenient with the defendant. Yet, instead of deciding to change his ways and to capitalize on the leniency, Hawkins continued on the wrong path. This resulted in his federal prosecution. And, this Court was again lenient in its disposition.

To be sure, the Court commends Hawkins for his strong family ties, for the preparations he has made for his eventual release, and for his efforts to rehabilitate himself. However, Hawkins's disciplinary infraction and his prior record weigh heavily here. So, too, does the length of his current sentence, which fell significantly below the Guidelines range. And, the defendant has served just over two years of that lenient, five-year sentence.

For all of these reasons, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.  But, **nothing in this Memorandum Opinion is meant to dissuade the BOP from releasing Hawkins to home confinement, pursuant to 18 U.S.C. § 3642(c).**

## V.  Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 156).  A separate Order follows.

Date:  October 22, 2020                             /s/
                                             Ellen Lipton Hollander
                                             United States District Judge